Koons, Administrator, *et al. v.* Beach.

---

KOONS, ADMINISTRATOR, ET AL. *v.* BEACH.

[No. 17,925.    Filed Dec. 15, 1896.    Rehearing denied Feb. 26, 1897.]

LIENS.—*Attorney's Fees.—Equitable Lien on Distributive Share of Heir for Services Rendered Estate.*—An attorney employed by a sole heir to assist the administrator in the collection of a life insurance policy held by such administrator for collection may maintain a lien on the funds so collected in the hands of the administrator by filing a notice of his intention to hold such lien upon the probate record containing the appointment of the administrator, at the entry of such appointment, where the compensation for such services was agreed upon in an amount stated, and it having been agreed that the attorney should be paid from the sum so .obtained in settlement of the insurance policy, and such lien is paramount to that of his client or the creditors of the latter. *pp. 138–141.*

EVIDENCE.—*Attorney's Fees.—Proof of Services.*—In an action by an attorney to enforce a lien for attorney's fees against a fund in the hands of an administrator, for services rendered in assisting in the collection of an insurance policy held by such administrator, evidence as to a conversation had by such attorney with an agent of the insurance company as to defenses against the policy and as to offers of compromise were admissible for the purpose of showing his participancy in the negotiations which led to the compromise and settlement. *p. 141.*

APPEAL AND ERROR.—*Longhand Manuscript of Evidence.—How Made a Part of Record.*—The longhand manuscript of the evidence must

be filed in the clerk's office before it is embodied in the bill of exceptions.  *p. 144.*

From the Henry Circuit Court.  *Affirmed.*

*James Brown* and *W. A. Brown,* for appellants.

*M. E. Forkner* and *F. E. Beach,* for appellee.

HACKNEY, J.—This was a suit by the appellee to declare and enforce a lien for attorney's fees against a fund remaining in the hands of Koons, administrator, and primarily distributable to the appellant, Cory, but claimed by the other appellants as assignees of Cory.  Two questions are presented: The action of the court in overruling the several demurrers of the appellants to the complaint, and in overruling their motion for a new trial.

The complaint alleged that the appellee was an attorney in regular practice; that Koons, as administrator, held for collection a policy of life insurance, payable to the estate of which he was administrator, and that Cory was, after the payment of the debts and costs of settling the estate, entitled to the balance of any sum collected upon said policy; that the insurance company was denying its liability upon said policy, and the administrator had employed attorneys to enforce the same; that said Cory had employed the appellee to assist in securing a compromise of the differences between said company and the estate, the compensation for such service having been agreed upon, in an amount stated, and it having been agreed that appellee should be paid from the sum to be obtained in such compromise and settlement; that the appellee did assist in securing a compromise and settlement with said company by which fifty per centum of the policy was paid to said administrator; that the appellee entered upon the probate record containing the ap-

pointment of Koons, at the entry of said appointment, a notice of intention to maintain an attorney's lien for said fees; that a large sum will remain, upon final settlement of the estate, for distribution to the credit of said Cory; that said Cory is insolvent and has assigned his interest in said fund and all other property to the appellant, Landis, and has given orders to others, his creditors, for sums which the administrator threatens to pay to the exclusion of the appellee's claim, and without retaining any sum for his benefit.

As a legal lien, authorized by section 7238, Burns' R. S. 1894 (5276, R. S. 1881), the facts pleaded are not sufficient. Such a lien may be held "on any judgment rendered in favor of any person or persons employing such attorney, to obtain the same: Provided, That such attorney shall, at the time such judgment shall have been rendered, enter, in writing, upon the docket or record wherein the same is recorded, his intention to hold a lien thereon, together with the amount of his claim." In this case so far as the complaint discloses, no judgment was rendered, no notice of lien was entered upon any judgment docket or order book, wherein a judgment would have been proper, and, necessarily, the basis for such legal lien did not exist. 1 Watson on Indiana Statutory Liens, section 34; *Alderman* v. *Nelson*, 111 Ind. 255; *Hill* v. *Brinkley*, 10 Ind. 102; *Hanna* v. *Island Coal Co.*, 5 Ind. App. 163. While the complaint alleges notice of lien, entered upon the order appointing the administrator, its facts can only be considered with reference to the theory of an equitable lien. It is true that this court said, in *Alderman* v. *Nelson*, *supra*, "It is not necessary to inquire whether an attorney had a lien on his client's judgment at common law, for the statute covers the entire subject and creates a lien, and that is the only one that can be enforced."

This statement was made with reference to liens upon judgments, and, if our statute covers the entire subject of such liens, it is clear that it does not attempt to cover the question of liens upon funds secured by the client through the aid of his employed attorney, and by other steps than a judgment. In the more recent case of *Justice* v. *Justice;* 115 Ind. 201, it was clearly established that the statutory lien was not the only lien afforded for the security of the attorney, in the performance of services beneficial to his client, but that equity supplied a lien, independent of the statute. In that case it was quoted with approval from *Puett* v. *Beard,* 86 Ind, 172, as follows: "It is generally agreed, both here and in England, that a solicitor has a lien for his costs upon a fund recovered by his aid, paramount to that of the persons interested in the fund or those claiming as their creditors," citing authorities.

And it was further quoted: "The reason for this rule is that the services of the solicitor have, in a certain sense, created the fund, and he ought, in good conscience, to be protected." This proposition is quoted with approval in *Hanna* v. *Island Coal Co., supra.* In 1 Watson on Indiana Statutory Liens, section 36, it is said: "An agreement between an attorney and his client that the attorney shall have a lien for his services to a certain amount upon the proceeds of any judgment recovered, constitutes a valid equitable assignment of such proceeds *pro tanto* which attaches to such proceeds as soon as the judgment is entered. Such an agreement is within the principle that an agreement between a debtor and a creditor that the creditor shall have a claim upon a specific fund for the payment of his debt is a binding equitable assignment of the fund *pro tanto.*" See 21 Am. Law Rev. 79; *Blankenbaker* v. *Bank of Commerce,* 85 Ind. 459;

*McNagney* v. *Frazer, Exr.*, 1 Ind. App. 98; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Courtney* v. *Courtney*, 4 Ind. App. 221.

From the rules stated it follows that the fund acquired by the aid of the employed attorney is burdened by the agreed fee and cannot be relieved by any act of the client.

In *Justice* v. *Justice, supra,* it was held that such lien was paramount to a judgment against the client, rendered before the proceeding in which the attorney's services aided in securing the property against which it was sought to enforce the judgment. It was there said: "A court of equity will control the legal lien of the judgment, and limit it to the actual interest of the judgment debtor in the property, and will fully protect the rights of those parties who have prior equitable interest in such property, or the proceeds thereof."

The complaint, in our opinion, made a case within the rules stated, and the demurrers were correctly overruled.

On the motion for a new trial one question is discussed, involving the weight of the evidence, and we are asked to pass upon conflicting testimony. This, it has many times been held, we are not permitted to do.

It is complained finally that the trial court erred in permitting the appellee to testify to a conversation had by him with an agent of the insurance company as to defenses against the policy, and as to offers of compromise. Counsel do not refer us to the record in support of this complaint and no reason occurs to us why such conversations may not have been proper in the discharge of appellee's duties as the attorney for Cory, and proof of them proper to establish his participancy in the negotiations which led to the compromise and settlement.

We find no error for which the judgment should be reversed.

Judgment affirmed.

### ON PETITION FOR REHEARING.

HACKNEY, J.—It is now earnestly contended that no basis exists for an attorney's lien where, without suit, payment is made to the client, in whole or in part by compromise, resulting from the efforts of the attorney. In other words, it is insisted, a judgment is indispensable to a lien, unless the attorney has the money or papers of his client upon which the lien is asserted. Dr. Wharton, in his work on Agency, section 623, *et seq.*, defines the liens of attorneys as *retaining* and *charging* liens, the former existing as against moneys or papers in the hands of the attorney, and the latter as one "which gives the creditor the right to collect such debt, as a priority, out of property in the hands of another." See also 1 Am. and Eng. Ency. of Law (1st ed.), pp. 969, 970. The charging lien, therefore, is that here involved and it need not be confused with the former. It is true that a line of cases hold that this lien does not obtain until the judgment is rendered. See Jones on Liens, section 193, *et seq.* But it will be found that this is so either with reference to statutory liens or as to the intervening right of the parties to settle their litigation short of judgment and not be disturbed in that right by a consideration of the attorney's claim. Public policy forbids that attorneys may interpose and defeat fair settlements between litigants and statutory liens are maintained only in the method pointed out by the statute.

While in the original opinion we employed the expressions "attorney's liens" and "equitable liens," we were justified by the common use of the expres-

sions in the books, yet they are not accurate. The lien which an attorney is said to have is merely a claim to the equitable interference of the court for his debt when he finds that his client is about to deprive him of it. See· Jones on Liens, section 155, and the numerous illustrations there given.

When, therefore, equity is appealed to, the inquiry is not necessarily, did the attorney procure a judgment? but it is, does he present a claim where the law supplies no remedy as efficient, and where in good conscience the client should not be permitted to defeat the attorney of his just compensation? One test of this claim, as originally shown, is this: Was the fund secured by the client through the efforts of the attorney. And another is: Was the compensation of the attorney expressly or by implication such a charge against the fund as to amount to an assignment of some part thereof. In either event equity will aid the the attorney in the enforcement of his claim, ordinarily called a lien.

In *Davies* v. *Lowndes*, 54 Eng. Com. Law, 808; 3 Com. Bench 827, it was held that the lien attaches upon money received by the client by way of compromise even after ·verdict and judgment against the client. Therefore, it could not be said that a judgment in favor of the client is indispensable.

In *Irving* v. *Viana*, 2 Young & Jerv. 70, it was held that an attorney, although not retained in the case to the end, was entitled to a lien on the fund which his exertions had aided in producing.

So, in *Wylie* v. *Coxe*, 15 How. 415, it was held that equity would enforce a lien in favor of an attorney who had partially prosecuted a claim against the Mexican Republic, before a commission created by an act of congress, but before it was concluded his client had died and an administrator had discharged the attor-

ney and employed another who recovered the money and it had been paid into the hands of the administrator. There, as here, there was an agreement upon a designated sum to be paid from the amount recovered. The commission was not a court of record; the attorney did not prosecute the claim to judgment; the relief sought was not in the tribunal in which the money was recovered; the lien enforced was not upon the judgment but, as here, was against the fund in the hands of the administrator. The case was as near the parallel of this as could well be found. But it may be doubted if it would not have been more accurate there to have treated that called a lien as an equitable assignment, as was done in the case of *Patten* v. *Wilson*, 34 Pa. St. 299, where the agreement was for a sum from the recovery and it was held recoverable as an equitable assignment to the attorney. To the same effect are authorities cited in the original opinion. The questions of priority discussed by counsel do not arise upon the complaint, the sufficiency of answers demurred out was not presented and the evidence, although we made some reference to it in the original opinion, is not before us. The record discloses the filing of the longhand manuscript of the evidence and the bill of exceptions, embodying the same, on the 6th day of November, 1895, and it does not appear that such manuscript was filed before it was embodied in, and filed as a part of said bill of exceptions. This is not sufficient to make the evidence a part of the record. *Chicago, etc., R. W. Co.* v. *Eggers, post*, 299, and cases there cited.

The petition is overruled.